IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHN DOUGLAS COWART,           )
#153264,                       )
                               )
        Plaintiff,             )
                               )
    v.                         )      CASE NO. 2:11-CV-382-WHA
                               )              [WO]
RICHARD ALLEN; GWENDOLYN       )
MOSLEY; LEWIS BOYD;            )
KENNETH SCONYERS;              )
GWENDOLYN BABERS;              )
 ANTHONY ASKEW, and            )
STEVEN WALKER,                 )
                               )
        Defendants.            )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This case is before the court on a 42 U.S.C. § 1983 complaint filed by John Douglas

Cowart ["Cowart"], an indigent state inmate currently incarcerated at the Easterling

Correctional Facility ["Easterling"].  Cowart alleges that he follows the Native American

religion, and he makes the following claims:

> (1) defendants allow anyone on the "approved list" to be on the Native
> American sacred grounds, knowing that some White gang members on the list
> desecrate the sacred grounds, and defendants refuse to take corrective action;
>
> (2) defendants break the ceremonial circle on Native American grounds to
> accommodate officers moving segregation inmates;
>
> (3) defendants refuse to allow tobacco for ceremonial purposes or transfer

Native American inmates to institutions that allow tobacco;

(4) defendants limit access to firewood and limit fires to three days a week while other institutions have fires daily;

(5) defendants refuse to allow Native American inmates to use tobacco in the ceremonial pipe;

(6) defendants prevent Native Americans from using the sweat lodge because it is 100 yards from the ceremonial grounds, the area is too small, tobacco is prohibited, and Cowart is not allowed to transfer to an institution with a functioning sweat lodge and tobacco use; and

(7) defendant Chaplain Askew desecrated Cowart's ceremonial items by touching them and, when questioned, said, "I can do this I'm a holy man," then laughed derisively.

*Compl. - Doc. No. 1*, at 2-5; *Doc. No. 28*, at 7.  Cowart complains that defendants' actions violate his rights under the First Amendment, Eighth Amendment, Fourteenth Amendment, Alabama Constitution, and Alabama Department of Corrections ["ADOC"] Policy No. 333.[1] *Id.* Cowart names as defendants Richard Allen, Gwendolyn Mosley, Lewis Boyd, Kenneth Sconyers, Gwendolyn Babers, Anthony Askew, and Steven Walker.  Cowart seeks injunctive relief and monetary damages for the alleged violations.[2] *Doc. No. 1*, at 6; *Doc. No. 28*, at 3-

---

[1]In his response to the defendants' report, Cowart also states that he is raising a claim under "48 USC 2000--Incarcerated Persons Religious Rights." *Doc. No. 28*, at 2.  It appears that Cowart may mean to refer to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, et seq. ["RLUIPA"].  However, Cowart never sought or received permission to amend his complaint to add a claim under RLUIPA; consequently, the court does not consider a RLUIPA claim.

[2]Specifically, Cowart asks for removal of the "sweat lodge" designation at Easterling, court costs and $5,000 from each defendant "for gross negligence due to personal bias and extreme prejudice." *Doc. No. 1*, at 6.

5.

The defendants filed an answer, special report, and supporting evidentiary materials addressing Cowart's claims for relief.  *Doc. No. 20.*  Defendants argue that Cowart's complaint fails to state a claim upon which  relief may be granted, that respondeat superior cannot be the basis of liability, and that defendants are entitled to sovereign or qualified immunity. *Doc. No. 20*, at 3, 6-10.

The court informed Cowart that the defendants' special report may, at any time, be treated as a motion for summary judgment and explained to Cowart the proper manner in which to respond to a motion for summary judgment.  *Doc. No. 21.*  Cowart responded.  *Doc. No. 28.*  The court deems it appropriate to treat the defendants' report and supplemental report as a motion for summary judgment.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted); *see* Fed. R. Civ. P. 56(a)

("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [– now dispute –] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to

---

[3] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word – genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.").  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities. [] Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  Consequently, to survive the defendant's properly supported motion for summary judgment, Cowart is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e).  "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Conclusory allegations based on subjective

beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate "produced nothing, beyond his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. . . ."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the

6

substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the

nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, the plaintiff fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III. DISCUSSION

**A. Suit Against the Defendants in Their Official Capacities - Absolute Immunity**

To the extent that Cowart sues the defendants in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

**B. Claims Against Defendants Based on Respondeat Superior or Supervisory Liability**

Defendants Allen, Mosley, Boyd, Sconyers, and Babers argue that they are entitled to dismissal of Cowart's claims against them that are based on a theory of respondeat superior or vicarious liability. *Doc. No. 20* at 8. To the extent that Cowart alleges that defendants are liable solely because they are responsible for the actions of other correctional officers, Cowart's claims must fail because respondeat superior is not a basis for section 1983 liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.")

Supervisors may be held liable under a theory of supervisory liability, but the standard is "extremely rigorous," and it is met "either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone*, 326 F.3d at

1360. "A causal connection may be established when:  1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007) (quotation marks and citation omitted); *Cottone*, 326 F.3d at 1360. To constitute widespread abuse, the deprivations "must be obvious, flagrant, rampant and of continued duration rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

Cowart alleges that defendant former DOC Commissioner Allen "should have approved or denied the Chaplainary Committee recommended action," in 2008, and, therefore Allen was "complicit" in the alleged unconstitutional policies. *Doc. No. 28*, at 3. Cowart has not come forward with any facts showing that defendant Allen personally participated in or directed the acts of his subordinates, and Allen has not submitted an affidavit in response to Cowart's suit. Cowart has not produced evidence of widespread abuse that put Allen on notice of the need to correct a constitutional violation.  As discussed in the remainder of this Recommendation, Cowart's claims that the policies and customs violate his constitutional rights lack merit.  Consequently, defendant Adams' motion for summary judgment with respect to Cowart's claim that Adams is liable based on his supervisory position in the DOC is due to be granted.

10

Cowart alleges that Mosely was Warden of Easterling at the time of alleged violations, Mosely implemented the policies regarding Native Americans, and she allegedly said, "Sue me, if a federal judge tells me to give it to you (tobacco), I'll think about it!" *Doc. No. 28*, at 4. In her affidavit, Mosely does not address her time spent at Easterling. She states that in her position as Institutional Coordinator for the Southern Region, she was "not involved in the daily operation at Easterling," but she was "aware that Easterling is a tobacco free institution and kn[e]w that in the past Kinnikinnick ha[d] been an acceptable substitute in the Native American religious ceremonies at Easterling." *Doc. No. 20-1* (alterations added). As for defendants Boyd, Sconyers, and Babers, plaintiff Cowart maintains that they were specifically advised about the alleged unconstitutional policies but failed to stop them. *Doc. No. 28*, at 3-4 (Boyd "was advised repeatedly as to the numerous violations," Sconyers was "a prominent maker/enforcer of policy," and Babers "was verbally advised of policy violation and des[e]cration by the Chaplain and took no actions"). In their affidavits, Boyd, Sconyers, and Babers do not aver they were not personally involved, and they acknowledge that the challenged policies are in place at Easterling. *Doc. No. 20-4* (Boyd states other inmates cannot be present when segregation inmates are moved, Easterling is tobacco free); *Doc. No. 20-5* (Sconyers states other inmates cannot be present when segregation inmates are moved, Easterling is tobacco free); *Doc. No. 20-6* (Babers states "[s]ometimes problems in the institution may call for the brief interruption of certain activities" and Easterling is tobacco free). Based on the record, it is not undisputed that none of these defendants were personally

involved in creating or imposing the alleged unconstitutional policies.  Even assuming these defendants personally participated in the acts concerning Cowart's claims, however, the policies in place did not violate Cowart's constitutional rights, and Cowart suffered no constitutional violation; therefore, summary judgment is due to be granted to defendants Mosely, Boyd, Sconyers, and Babers in their supervisory capacities.

### C.  Constitutional Claims

### 1.  Tobacco Use

Cowart complains that prison policy prohibits him from using tobacco during Native American ceremonies or in a ceremonial pipe.  The court previously addressed nearly identical claims regarding tobacco use by Thomas Otter Adams, a Native American inmate at Easterling.  *See Adams v. Mosley*, No. 2:05-cv-352-MHT, 2008 WL 4369246 (M.D. Ala. Sept. 25, 2008) (adopting recommendation by the Honorable Charles S. Coody).  The court ruled that the prison's complete ban on tobacco did not violate the inmate's rights under the

First Amendment,[4] Due Process,[5] Equal Protection,[6] Eighth Amendment,[7] or Religious Land

Use and Institutionalized Persons Act ["RLUIPA"] of 2000.  *Id.* at *4-5, *8-13.  Similar

claims regarding the tobacco ban raised under the First Amendment were dismissed in

*Coleman v. Allen*, 2:09-cv-311-TMH, 2012 WL 4350945 (M.D. Ala. Sept. 24, 2012)

(adopting recommendation by the Honorable Susan Russ Walker, 2012 WL 4378086, at *8

---

[4]To demonstrate a free exercise violation of the First Amendment, an inmate must show that prison officials administered or implemented a policy or regulation, not reasonably related to any legitimate penological interest or security measure, which substantially burdens and significantly interferes with the practice of the inmate's religion or restricts his free exercise of a sincerely held religious belief.  *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989); *see also Turner v. Safley*, 482 U.S. 78, 89-91 (1987) (burden is on inmate to disprove the validity of the regulation).  Factors to be considered in making the determination include: (1) whether there is a valid, rational relationship between the regulation and the legitimate government interest it serves; (2) whether there are alternative means of exercising the right available to the inmates; (3) the impact accommodation of the asserted right will have on jail staff and other inmates; and (4) the absence of ready alternatives as evidence of reasonableness of the regulation.  *Turner*, 482 U.S. at 89-91.

[5]Two circumstances give rise to due process protections for inmates. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. [] The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999) (citing *Sandin v. Conner,* 515 U.S. 472, 484 (1995)) (other citations omitted).

[6]To establish an equal protection violation, an inmate must show, at a minimum, that (1) "he is similarly situated to other prisoners who received" more favorable treatment; and (2) the prison official "engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Damiano v. Florida Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986); *see also Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (per curiam) (citing *Damiano*); *Adams*, 2008 WL 4369246 at *8-9 (citing *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

[7]An inmate raising an Eighth Amendment claim must show (1) a deprivation of a basic human need which is sufficiently serious, and (2) officials acted with a sufficiently culpable state of mind.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

(M.D. Ala. Sept. 7, 2012) (Native American inmate failed to show tobacco ban at Easterling violates the First Amendment)).   In *Coleman*, the undersigned determined that prison officials "demonstrated that limited tobacco use in the Native American community at Easterling was unsuccessful and created security issues." *Coleman*, 2012 WL 4378086, at *9.  The court further determined that the inmate "fail[ed] to demonstrate how the available alternative herb [kinnickinnick] which Native American inmates may use during religious ceremonies unduly burdens the free exercise of his religion." *Id.* (alteration added).  Like the plaintiffs in *Adams* and *Coleman*, Cowart has not shown, beyond his own conclusory statements, that the tobacco-free herb kinnickinnick is an unacceptable substitute that substantially burdens his religious exercise.  *Adams*, 2008 WL 4369246, at *11; *Coleman*, 2012 WL 4378086, at *8-9; *Doc. No. 28-2* (Cowart affidavit); *Doc. No. 28-3* (Mission Stmt. of Inmate Council, signed by Cowart and others), *Doc. No. 28-4* (Cowart affidavit regarding inmate Poe); *Doc. No. 28-5* (Council letter, signed by Cowart, to Eliouse Josey regarding A.R. 333); *Doc. No. 28-6* (Council letter, signed by Cowart, to Askew regarding sacred grounds); *Doc. No. 28-7* (Council letter, signed by Cowart, to Askew regarding sweat lodge, tobacco, and grounds); *Doc. No. 28-8* (Council letter, signed by Cowart and others, regarding sweat lodge and ceremonies); *Doc. No. 28-9* (Council letter, signed by Cowart, regarding tobacco); *Doc. No. 28-9* (Cowart complaint for intervention from Chaplainary Committee); *Doc. No. 28-10* (Cowart diagram of requested box for Native American grounds); *Doc. No. 28-11* (inmate Lichty affidavit and apology for walking on Native American grounds); *Doc.*

14

*No. 28-12* (Cowart affidavit regarding plantings and medicine bags); *Doc. No. 28-13* (Buckner affidavit complaining Askew wrongfully touched sacred items, and Buckner uses tobacco in Native American ceremonies); *Doc. Nos. 28-14, 28-15, 28-16* (affidavits by non-Native Americans regarding their access to the Native American sacred grounds).

In addition, the court in *Adams* ruled that the prison officials did not violate the inmate's due process rights by refusing to transfer him to an institution that permits tobacco use. *Adams*, 2008 WL 4369246 at *4-6, *12. Transfer to more adverse conditions of confinement does not, itself, violate the Constitution. *See Sandin*, 515 U.S. at 485-86 (disciplinary confinement of inmate in segregation does not implicate a constitutionally protected liberty interest); *see also Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (discussing application of *Sandin* to placement of inmates in "supermax" facility). Cowart presents no additional evidence that differentiates him or the circumstances of his case from those in *Adams* and *Coleman.* Consequently, to the extent Cowart raises a due process claim that defendants wrongly refused to allow him to use tobacco, or to transfer him to an institution that does allow it, defendants are entitled to summary judgment on Cowart's claims.

### 2. Interruption of Ceremonies, Access to Fires, Sweat Lodge

Cowart's other claims fare no better. Cowart complains that guards interrupt Native American ceremonies so they can move prisoners who are in administrative segregation, the prison allows them limited use of fires compared to inmates at other institutions, the sweat lodge is too far from the ceremonial grounds, and the size of the sweat lodge area is

inadequate.  As part of the relief requested in this case, Cowart asks the court to order removal of the "sweat lodge" designation for Easterling, and though he does not specifically ask the court for transfer, he states he repeatedly asked for a transfer but was told he had no grounds for a transfer.  *Doc. No. 1*, at 6; *Doc. No. 28*, at 11.

In *Coleman*, the court rejected an Easterling inmate's similar complaint that prison officials violated his First Amendment rights when guards interrupted Native American religious services to move other, segregated inmates.  *See Coleman*, 2012 WL 4378086 at *5, *9.  The court also rejected a claim that prison limits on the timing and size of fires for Native American ceremonies violated the First Amendment.  *Id.* at *5 (limits on the size and advanced scheduling for fires were reasonably related to legitimate and compelling penological interests of security and orderly running of institution, and they did not unduly burden inmate's free exercise of religion).  The court dismissed the inmate's First Amendment claim that the sweat lodge area was too small and not built according to religious requirements.  *Id.* at *7 (inmate "has not produced any evidence that he could not engage in other religious practices and express his faith in the absence of a 'legitimate' sweat lodge, or that a purportedly 'non-legitimate' sweat lodge constitutes a substantial infringement" on the inmate's religious beliefs).  Again, Cowart does not explain how his circumstances differ materially from those in *Adams* or *Coleman*; consequently, his claims are foreclosed by the decisions in *Adams* and *Coleman.  S*ummary judgment is therefore due to be granted in favor of defendants on Cowart's claims that defendants unconstitutionally

interrupt Native American ceremonies to move inmates in segregation, that the sweat lodge is not built according to religious specifications, and that defendants unduly limit Cowart's access to fires for Native American ceremonies.

To the extent that Cowart raises a separate Equal Protection claim regarding the number of fires he may have, his claim fails. Cowart makes conclusory allegations that other ADOC facilities permit daily fires for Native Americans, while he is allowed fire only three times a week. *Doc. No. 1*, at 4. Cowart does not identify the other facilities or the manner in which fires there are permitted, and he does not submit evidence suggesting that defendants refuse to allow him fires at Easterling because of his Native American religion or on some other constitutionally protected basis. Cowart has not shown on this record that he is similarly situated to others who receive more favorable treatment, or that defendants acted with purposeful discrimination against him based on some protected basis. *See Jones,* 279 F.3d at 946-47. Summary judgment is therefore due to be granted to defendants on Cowart's equal protection claim.

### 3. Gang Members on Ceremonial Grounds

Cowart complains that defendants allow "anyone to be on the 'approved list' for the Native American grounds," knowing that some racist gang members are entering the grounds and desecrating them. *Doc. No. 1,* at 4.

To gain access to the Native American ceremonial grounds, the prison "requir[es] inmates to submit a request to the Chaplain identifying them as an adherent to the Native

17

American faith and requesting access to the ceremonial ground ... ." *Coleman*, 2012 WL 4378086, at *10.  This policy is for the safety and security of inmates, correctional personnel, and visitors, "as well as to ensure that inmates have the opportunity to practice their chosen religion." *Id.*  The prison cannot exclude sincere practitioners of the Native American faith from the Native American grounds simply because they are not of Native American race. *E.g., Morrison v. Garraghty*, 239 F.3d 648, 658-5 (4th Cir. 2001) (prison cannot deny non-Native Americans the ability to possess Native American religious based on their race). Defendant Boyd avers, and Cowart does not dispute, that "whenever any gang members are noticed on the Native American grounds they are dispersed and disciplined." *Doc. No. 20-4*, at 1.  Based on the summary judgment record, defendants do not allow racist gang members to desecrate the Native American grounds.  Cowart has not created a genuine issue as to whether the prison's policy is reasonably related to legitimate penological interests or that defendants' actions unduly burdened his ability to engage in the free exercise of his religion. Cowart has therefore failed to show a violation of his First Amendment rights with respect to this claim, and defendants are entitled to summary judgment on it.

### 4.  Desecration by Chaplain

Cowart claims that defendant Chaplain Askew desecrated Cowart's "ceremonial items, sacred boxes, or bundles upon entry to Easterling Correctional Facility" by touching them. *Doc. No. 1*, at 5.  When asked to stop, Askew allegedly said, "I can do this, I'm a holy man," and then laughed "derisively." *Id.*  Cowart alleges that in violation of prison

18

regulations, Askew called Cowart to his office, where Cowart "found he had already rif[]led

my sacred pipe bundle and all other ceremonial objects, not one item did he not touch . . . ."

*Doc. No. 28*, at 6.  Askew avers he did not touch Cowart's religious items, laugh at him,

make insensitive comments to him, or violate his property.  *Doc. No. 20-2*, at 2.

Assuming for purposes of this motion that Askew did as Cowart alleges, Cowart's

claim nevertheless fails.  First, it is unclear that Askew violated any prison rule.  The policy

states that prison personnel may not touch Native American medicine bags or sacred pipes,[8]

but Cowart did not see Askew actually touch medicine bags or sacred pipes.  Second, Cowart

does not explain how Askew's alleged act substantially burdens the free exercise of Cowart's

sincerely held religious beliefs.  *Hernandez*, 490 U.S. at 699.  Third, brief mishandling of

Cowart's sacred items in an isolated act of negligence does not amount to an infringement

on Cowart's First Amendment free exercise of religion. *Cf. Lolley v. Louisiana Corr. Servs.*,

No. 09–00555–CG–B,  2011 WL 4499331 at *6 (S.D. Ala. Sept. 9, 2011) (brief mishandling

by guard of sacred religious item box during an official prison shakedown was legitimate

search and reasonably related to legitimate penological goal of security, thus it did not violate

*Turner*).  Cowart therefore fails to create a genuine issue as to whether his First Amendment

right was violated.  Cowart does not specifically argue that Askew's acts violated other

---

[8]Policy AR 333, section V(E)(18) provides, in relevant part: "Specifically, the ADOC shall train its personnel not to touch the medicine bags or sacred pipes of the Native American inmates. Should an officer believe that it is necessary to inspect the contents of a Native American's medicine bag or sacred pipe, the officer shall bring the inmate to the Chaplain's office where the contents of the bag or the pipe can be visually inspected. . . ." *Defs.' Ex. 3 ¶ V(E)(18) - Doc. No. 20-3*, at 14-15.

constitutional rights.  Summary judgment is therefore due to be granted on this issue.

### D.  Violations of State Law and Prison Regulations

Cowart asserts that defendants violated the Alabama Constitution and ADOC rules. To the extent that Cowart claims a violation of state law as the basis for § 1983 relief, he is entitled to no relief from this court.  Violations of departmental rules or regulations do not, standing alone, infringe on an inmate's federal constitutional rights.  *See Sandin*, 515 U.S. at 481-82 (prison regulations are not intended to confer rights or benefits on inmates but are merely designed to guide correctional officials in the administration of prisons)*; United States v. Caceres*, 440 U.S. 741, 751-52 (1979) (mere violations of agency regulations do not raise constitutional questions); *Magluta v. Samples*, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004) (noting that "procedural requirements set out in [an administrative] regulation are not themselves constitutional mandates").

The court's exercise of supplemental jurisdiction over the state law claims is completely discretionary.  Under 28 U.S.C. § 1367(c)(3), the court "may decline to exercise supplemental jurisdiction over a [state law claim] if . . . the district court has dismissed [the related federal] claim[] over which it has original jurisdiction . . . ."  The court's discretion is advised by *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), in which the Court held that

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.[]  Certainly, if the

> federal claims are dismissed before trial, even though not insubstantial
> in a jurisdictional sense, the state claims should be dismissed as well.[]

*Id.* at 726 (footnotes omitted).  In *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988), the Supreme Court reiterated that "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain,[] the federal court should decline the exercise of jurisdiction by dismissing the [claim] without prejudice . . . ."  *Id.* (footnote omitted).  Accordingly, the court concludes that Cowart's claims alleging violations state law should be dismissed without prejudice.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  Plaintiff's federal claims be DISMISSED with prejudice.

4.  Plaintiff's state-law claims be DISMISSED without prejudice.

5.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before September 9, 2014, the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this

Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982); *see also Bonner*, 661 F.2d at 1209 (adopting pre-October 1, 1981, opinions of the Fifth Circuit as binding precedent).

DONE, this 26th day of August, 2014.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE